## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CARL GREEN<br>Assignee of Kathleen Gray,<br><br>Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, INC.,<br><br>Defendant. | Case No. 19-cv-2949 (SRN/ECW)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6). (Dkt. 3.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 3) be granted and that the Complaint be dismissed without prejudice.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

**A.     Procedural Background**

On September 10, 2019, Plaintiff sent an email to an Arizona-based employee of Defendant. (Dkt. 1 ¶ 1.) The email was blank except for an electronic version of the Summons and Complaint dated September 10, 2019. (Dkt. 1 ¶ 1.) The Summons and Complaint were internally forwarded to an unidentified senior employee of Defendant on October 23, 2019. (Dkt. 1 ¶ 1.) According to Defendant's Notice of Removal, proper service of the Summons and Complaint had not at that time been satisfied by Plaintiff in

accordance with the Federal Rules or the Minnesota Rules of Civil Procedure. (Dkt. 1 ¶ 1.) As of the date of the November 22, 2019 removal of this action to federal court pursuant to 28 U.S.C. § 1332, Defendant asserted that Plaintiff had not filed the Summons and Complaint in Washington County District. (Dkt. 1 ¶ 2.) As part of the removal, Defendant filed an action in Washington County District along with a notice of removal. *See Green v. Bayview* 82-CV-19-5688 (Wash. Cty. Dist. Ct.). The filing included the Summons and Complaint. (Dkt. 1-2.)

**B.     Facts Alleged in the Complaint**

The operative Complaint alleges as follows: Plaintiff challenges the failure of Defendant to honor its agreement to modify mortgages and prevent foreclosures under the United States Treasury's Home Affordable Modification Program ("HAMP"). (Dkt. 1-1 ¶¶ 1-2.)

In October of 2008, J.P. Morgan Chase, who provided the loan at issue, which was being serviced by Defendant, accepted $15 billion in funds from the United States Government as part of the Troubled Asset Relief Program ("TARP"), 12 U.S.C. §5211. (*Id.* ¶¶ 1-3.) J.P. Morgan Chase had signed a contract with the U.S. Treasury agreeing to participate in HAMP—a program in which Bayview Loan Servicing, Inc, as the servicing arm of J.P. Morgan Chase, received incentive payments for providing affordable mortgage loan modifications and other alternatives to foreclosure to eligible borrowers. (*Id.* ¶ 3.)

As a participating servicer to HAMP, Defendant has in turn, entered into a standard agreement with Plaintiff entitling him to a temporary modification of Plaintiff's

existing note and mortgage.  (*Id.* ¶ 4.)  Plaintiff complied with the application by submitting the required documentation and has sought to stop the sale of the property pending processing of the application.  (*Id.* ¶ 4.)  Defendant has ignored its contractual obligation to process the application and stop the sale, resulting in Plaintiff being wrongfully deprived of an opportunity to cure delinquencies, pay the mortgage loan, and save the home at issue.  (*Id.* ¶¶ 4-5.)  Plaintiff alleges that he is eligible for the program and under state law is entitled to a postponement of the sale.  (*Id.* ¶ 10.)

The industry entities that perform the actual interface with borrowers, which include tasks such as processing, escrow maintenance, loss mitigation and foreclosure, are known as servicers.  (*Id.* ¶ 13.)  Servicers typically act as the agents or the entities that hold mortgage loans, thereby making Defendant an agent for the entities that hold mortgage loans.  (*Id.* ¶ 13.)

Should a servicer elect to participate in HAMP, they execute a servicer Partition Agreement ("SPA") with the federal government.  (*Id.* ¶ 14.)  State law and the SPA mandate that a servicer evaluate all loans it services that are 60 or more days delinquent for HAMP modification.  (*Id.* ¶¶ 14-16.)  If a borrower contacts a participating servicer regarding a HAMP modification, the participating servicer must collect income and hardship information to determine if HAMP is appropriate for borrowers.  (*Id.* ¶ 16.)

Plaintiff asserts a number of claims for relief against Defendant, including breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel, in the alternative; and violation of the Minnesota Consumer Protection Act and applicable regulations.

3

With respect to the breach of contract in Count I, Plaintiff only alleges that he "brings this claim in the application submitted and required to be processed and the sale stopped or delayed while the application is being processed" and that he has suffered an injury in the form of foreclosure activity against the house. (*Id.* ¶¶ 18-19.)

As to the breach of the implied covenant of good faith and fair dealing claim in Count II, Plaintiff asserts that Defendant is obligated by statute, contract, and the common law to act in good faith and to deal fairly with each borrower, and to remain faithful to the intended and agreed expectations of the parties in their performance. (*Id.* ¶¶ 20-21.) Defendant routinely and regularly breached this duty and caused harm to Plaintiff by: failing to perform loan servicing functions consistent with its responsibilities to Plaintiff; failing to properly supervise its agents and employees, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys; routinely demanding information in its files; making inaccurate calculations and determinations of Plaintiff's eligibility for HARP; failing to follow through on written and implied promises; failing to follow through on contractual obligations; and failing to give permanent or process modifications and other foreclosure alternatives to qualified borrowers. (*Id.* ¶¶ 22-23.)

In his Promissory Estoppel, in the Alternative Count III, Plaintiff alleges that by way of processing Plaintiff's application, Defendant made representations to Plaintiff that if returned the application would stop the sale of the house until supporting documentation would be received in a timely manner, which were made to induce Plaintiff to rely on those representations, and that he did rely on those representations, by

4

submitting and processing applications and documents under state law.  (*Id.* ¶¶ 25-27.)  Given the language of the application and process, Plaintiff's reliance was to his detriment and he has yet to receive a modification process to completion and has lost the opportunity to fund other shortages to deal with the default and to avoid foreclosure.  (*Id.* ¶ 28.)

In the final Count, Plaintiff alleges Violation of the Minnesota Consumer Protection Act and Applicable Regulations based on allegations that Defendant has violated and continues to violate the Minnesota Consumer Protection Act and applicable regulations.  (*Id.* ¶ 30.)  As it relates to this claim, Plaintiff asserts that Defendant's conduct was unfair, deceptive, oppressive, unconscionable, and contrary to public policy and generally recognized standards applicable to consumer lending business; its conduct violated the requirement of good faith, and fair dealing applicable to contracts; that its conduct violated existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare; and that it made deceptive representations or failed to disclose relevant information as to loan modifications offered to borrowers.  (*Id.* ¶¶ 30-32.)  The claim also asserts that Defendant is a mortgage lender and made false or misleading representations to borrowers, and it offers foreclosure-related services without adequately describing services offered.  (*Id.* ¶¶ 32-33.)  According to Plaintiff, these actions were willful and in bad faith.  (*Id.* ¶¶ 35-36.)  Plaintiff claims to have been injured by virtue of Defendant's violations as the result of a wrongful foreclosure and lost loan modification opportunities.  (*Id.* ¶ 34.)

Plaintiff seeks, declaratory, injunctive, and compensatory relief.

Defendant moves to dismiss Plaintiff's entire Complaint for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

6

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters

7

outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

### III.   ANALYSIS

#### A.   Count I: Breach of Contract

Defendant asserts that Plaintiff failed to properly plead a breach of contract claim because he has not adequately alleged the formation of a contract. (Dkt. 5 at 8-9.) "To ultimately prevail on a breach-of-contract claim under Minnesota law, a plaintiff must demonstrate the '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant.'" *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)). "'The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration.'" *East Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 970 (D. Minn. 2018) (quoting *Taxi Connection v. Dakota, Minn. & E. R.R. Corp.*, 513 F.3d 823 826 (8th Cir. 2008)); *see also*

8

*Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006).

Here, there are allegations pertaining to Plaintiff filling out a HAMP application, but no acceptance of that application by Defendant. (Dkt. 1-1 ¶¶ 4-5, 18.) More importantly, there is no allegation of any consideration in this case, as there is no indication that Plaintiff has given, or will give, any consideration for the postponement of the foreclosure or the alleged loan modification. *See Forseth v. Bank of Am., N.A.*, No. CIV. 13-38 SRN/TNL, 2013 WL 2297036, at *6 (D. Minn. May 24, 2013) ("As noted, there is no indication of the exchange of any consideration for Bank of America's promise to postpone foreclosure. This alone means that no binding contract was formed.").

The Court notes Plaintiff also alleges that J.P. Morgan Chase had signed a contract with the U.S. Treasury Agreeing to participate in HAMP, and while it is not entirely clear, that Defendant signed a SPA with the federal government. (Dkt. 1-1 ¶¶ 3, 14-16.) To the extent Plaintiff asserts that he is a third-party beneficiary to such contracts, the claim still fails to state a viable claim for relief. "Although one who is not a party to a contract generally has no rights under the contract, 'a third party may enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration.'" *Arvig Enters., Inc. v. Sansome St. Appraisers, Inc.*, No. CIV. 12-2510 RHK/LIB, 2013 WL 5728161, at *4 (D. Minn. Oct. 22, 2013) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012)). "[A] third party is an intended beneficiary under a contract when it is appropriate to recognize third-party

9

beneficiary rights to effectuate the intent of the parties to the contract, and either the duty owed or the intent-to-benefit test is satisfied." *Caldas*, 820 N.W.2d at 833 (citation omitted). "A third party to the contract who does not meet this standard is merely an incidental beneficiary and has no right to enforce the contract." *Loftness Specialized Farm Equip., Inc. v. Terry Twiestmeyer, Steven Hood,* No. CV 11-1506 (DWF/TNL), 2017 WL 3668757, at *5 (D. Minn. Aug. 23, 2017) (citing *Caldas*, 820 N.W.2d at 833); *see also Hickman v. SAFECO Inc. Co. of Am.*, 695 N.W.2d 365 (Minn. 2005) (citing Restatement (Second) of Contracts § 302).

The Court finds that the Complaint does not state a plausible assertion that Plaintiff was an intended third-party beneficiary of any agreement with the U.S. Treasury. While "[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *McInroy v. BAC Home Loan Servicing, LP*, No. CIV. 10-4342 DSD/SER, 2011 WL 1770947, at *2 (D. Minn. May 9, 2011) (citing Restatement (Second) of Contracts § 313 cmt. a). Moreover, there is no private cause of action under HAMP. *See Burke v. Bank of Am., NA.,* No. CIV. 11-2344 DWF/JSM, 2012 WL 1233013, at *4 (D. Minn. Feb. 16, 2012). To find that an agreement designed to implement a federal program could not be enforced by beneficiaries of the program would obviate Congress' decision not to otherwise provide a private right of action to those beneficiaries. *See Astra USA, Inc. v. Santa Clara Cnty., Calif.*, 563 U.S. 110, 118 (2011) ("The absence of a private right to enforce the statutory . . . obligations would be rendered meaningless if [a third-party] could overcome that obstacle by suing to enforce the contract's . . .

obligations instead."). Because Plaintiff is not an intended third-party beneficiary to the alleged agreements under HAMP, dismissal of the breach of contract claims is warranted. *See McInroy*, 2011 WL 1770947, at *3 (collecting cases).[1]

For all of the reasons stated above, the Court recommends granting the Motion to Dismiss as to the breach of contract and that the claim be dismissed without prejudice.

## B.   Count II: Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed because the implied covenant of good faith and fair dealing cannot apply to Plaintiff as no contract requiring a loan modification exists; and second, if a contract does exist, Defendant has not breached any duties owed to Plaintiff. (Dkt. 5 at 10-12.)

Under Minnesota law, all contracts include an implied covenant of good faith and fair dealing. *See Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 36 (Minn. Ct. App. 2012) (citations omitted); *see also U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 721 (D. Minn. 2017) (citing *In re Wren*, 699 N.W.2d 758, 765 n.10 (Minn. 2005)) ("Minnesota law implies a covenant of good faith and fair dealing into

---

[1]   The Court does not address Defendant's argument that because HAMP does not authorize a private cause of action it essentially serves to preempt all claims in this action derived from the review and processing of the HAMP application (Dkt. 5 at 6-8), as this Court has recommended dismissal on other grounds, and based on the Eighth Circuit's caution against such holding. *See Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 675 n.4 (8th Cir. 2012) ("While the district court's analysis of HAMP preemption in this case may be questionable, we need not address this issue because we find that the complaint fails to meet the *Twombly* pleading standards.").

11

every contract."). The covenant of good faith and fair dealing requires that "one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin County 1986 Recycling Bond Litigation,* 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted).

Here, the Court has found that Plaintiff has failed to adequately allege the formation of a contract. The "covenant serves only 'to enforce existing contractual duties, and not to create new ones.'" *Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 017CV01048JRTKMM, 2017 WL 8944023, at *4 (D. Minn. Nov. 2, 2017), *R.&R. adopted by*, No. CV 17-1048 (JRT/KMM), 2018 WL 461136 (D. Minn. Jan. 17, 2018) (quoting *Allen v. Thom*, No. A07-2088, 2008 WL 2732218, at *5 (Minn. Ct. App. July 15, 2008)). Indeed, courts have held that "Minnesota does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing without an underlying breach of contract claim." *Stenzel v. Peterson*, No. CV 17-580 (JRT/LIB), 2017 WL 4081897, at *7 (D. Minn. Sept. 13, 2017) (citing *I-Sys., Inc. v. Softwares, Inc.*, No 02-1951, 2004 WL 742082, at *12 (D. Minn. Mar. 29, 2004)); *see also Oberg v. Shapiro*, No. 15-CV-3678 (PJS/SER), 2016 WL 4501354, at *5 (D. Minn. Aug. 1, 2016), *R.&R. adopted by*, 2016 WL 4497754 (D. Minn. Aug. 26, 2016) (quoting *Int'l Travel Arrangers v. NWA, Inc.*, 723 F. Supp. 141, 152-53 (D. Minn. 1989)) ("'Minnesota does not recognize a cause of action for breach of a covenant of good faith and fair dealing independent from an underlying breach of contract claim.'"). Because Plaintiff has not adequately alleged the existence of a contract, the motion to dismiss as to the implied

12

covenant of good faith and fair dealing claim in Count II should be granted and the claim be dismissed without prejudice.[2]

## C. Count III: Promissory Estoppel

Defendant argues that Plaintiff's promissory estoppel claim fails because Plaintiff has failed to adequately allege the elements of such a claim and on the basis that the claim is barred by Minnesota's Statue of Frauds under Minnesota Statue Section 513.33. (Dkt. 5 at 12-13.) A claim of promissory estoppel requires a plaintiff to show that "'(1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice.'" *City*

---

[2] To the extent that it is Plaintiff's position that he has alleged that there is implied covenant of fair dealing within the mortgage at issue, the claim still fails as a matter of law as there is no contractual provision in that agreement related to a right to modification. (*See* Dkt. 6-1.) In order to state a claim for a breach of the implied covenant of good faith and fair dealing, a plaintiff "must allege 'sufficient facts which, if proven, would support an inference of bad faith.'" *Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*, No. 13-cv-1780 (JRT/JJK), 2013 WL 6858573, at *11 (D. Minn. Dec. 30, 2013) (quoting *White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 885 (D. Minn. 1997)). "A party to a contract 'does not act in bad faith by asserting or enforcing its legal or contractual rights.'" *Sterling Capital Advisors, Inc. v. Herszog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) (quoting *Burgmeier v. Farm Credit Bank*, 499 N.W.2d 43, 50 (Minn. Ct. App. 1993)); *see also Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 017CV01048JRTKMM, 2017 WL 8944023, at *4 (D. Minn. Nov. 2, 2017), *R.&R. adopted*, No. CV 17-1048 (JRT/KMM), 2018 WL 461136 (D. Minn. Jan. 17, 2018) (citations omitted). Bad faith can be found where the facts alleged show "an ulterior motive for [a party's] refusal to perform a contractual duty." *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (citation omitted). Since Defendant had no contractual obligation to modify the loan prior to foreclosure, the Complaint, as alleged, fails to state a claim for relief because there are no plausible allegations of bad faith. *See Ming'ate v. Bank of Am., N.A.*, No. CIV. 11-1787 ADM/TNL, 2011 WL 4590431, at *5 (D. Minn. Sept. 30, 2011) ("Because Bank of America had no contractual obligation to modify the loan, they did not act in bad faith by foreclosing and proceeding with the sheriffs sale. Therefore, Plaintiffs' claim of a breach of the covenant of good faith and fair dealing also is dismissed.").

13

*Ctr. Realty Partners, LLC v. Macy's Retail Holdings, Inc.*, No. 17-CV-528 (SRN/TNL), 2017 WL 4081896, at *9 (D. Minn. Sept. 13, 2017) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011), citing *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001)).  "As a general rule . . . promissory estoppel is not available where a contract exists." *McKenzie v. Lunds., Inc.*, 63 F. Supp. 2d 986, 1004 (D. Minn. 1999) (citing *Banbury v. Omnitrition Int'l*, 533 N.W.2d 876, 881 (Minn. Ct. App. 1995)).

Pursuant to Minn. Stat. § 513.33, subd. 2, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Courts have concluded that, "loan modifications constitute a credit agreement." *Burke v. Bank of Am., NA.,* No. CIV. 11-2344 DWF/JSM, 2012 WL 1233013, at *5 (D. Minn. Feb. 16, 2012) (citing *Myrlie v. Countrywide Bank*, 775 F. Supp. 2d 1100, 1108-09 (D. Minn. 2011)); *see also Ming'ate*, 2011 WL 4590431, at *4.  In *Ming'ate*, the Court considered a similar oral promise to the one alleged here, where there was an oral promise not to take adverse action during a HAMP application process.  In response to a promissory estoppel claim the court held as follows:

> The Plaintiffs argue that Bank of America promised that their HAMP application was being considered and that during this process "no adverse action would be taken by the Defendant or its agents."  Because this promise was oral, it fails by application of Minn. Stat. § 513.33 and thus warrants dismissal.

*Ming'ate*, 2011 WL 4590431, at *5 (internal citation omitted); *Burke*, 2012 WL 1233013, at *5 ("Here, Plaintiffs argue that Defendants promised that they would consider and

14

determine Plaintiffs' eligibility for a HAMP modification, but that Defendants did not do so before foreclosure. In essence, Plaintiffs are seeking to enforce an alleged oral promise for modification or an oral promise to stay foreclosure. A loan modification constitutes a credit agreement. Therefore, to be enforceable, the modification must be in writing and signed by the creditor and the debtor.") (citation omitted). Because the alleged promises by Defendant deal with a credit modification, the promissory estoppel claim should be dismissed without prejudice because there is no written agreement signed between the parties to that effect.

**D.     Count IV: Minnesota Consumer Protection Act**

In Count IV, Plaintiff alleges that Defendant violated the Minnesota Consumer Protection Act ("CPA"). According to the CPA:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable. . . .

*See* Minn. Stat. § 325F.69, subd. 1; *see also Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 1010-11 (D. Minn. 2015).

Defendant complains that Plaintiff's claim under the CPA lacks the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure. (Dkt. 5 at 14-15.) The CPA requires that Plaintiff plead false, deceptive, or misleading conduct by Defendant. *See E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). "Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims." *Id.* (citing *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010)) (finding

15

the Rule 9(b)'s requirements apply to claims brought under Minn. Stat. § 325F.69). Rule 9(b) of the Federal Rules of Civil Procedure states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A pleading which alleges fraud or mistake must identify "who, what, where, when and how." *Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1028 (D. Minn. 2010) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)). "The purpose of Rule 9(b) is to provide the defendant with notice of and a meaningful opportunity to respond specifically to charges of fraudulent conduct by apprising the defendant of the claims against it and the facts upon which the claims are based." *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-md-2359, 2013 WL 3717743, at *6 (D. Minn. July 15, 2013) (citing *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

With respect to the CPA claim in this case, Plaintiff only makes threadbare and conclusory assertions that Defendant made unidentified deceptive representations and omissions. (Dkt. 1-1 ¶¶ 30-33.) There are no allegations in the Complaint regarding specifically who made a specific misrepresentation or when they were made, let alone the specifics of the alleged misrepresentations or omissions. As such, the Court finds that the CPA claim should be dismissed without prejudice for failing to comply with the particularity requirements of Rule 9(b).

16

### E.     Plaintiff's Arguments

Plaintiff filed no direct opposition to the Motion to Dismiss.  Instead he filed a pleading titled "Notice of Lack of Personal Jurisdiction as there was No State Action to Remove," in which Plaintiff argued in relevant part as follows:

> A Courts [sic] dismissal for lack of personal jurisdiction is because Plaintiff has not filed his action or even served it upon Defendant.  The action was provided by email as part of settlement negotiations for a loan modification with Carlos Medina-Lozano, Chief Asset Manager at Bayview, nor has Plaintiff voluntarily submitted by or grants the Court personal jurisdiction over him.  He was told and clearly understood if he provided a letter of social security awards verification by a Donald Short who called Carl Green on or about October 12, 2019 telling him the modification would be grated [sic] but that two months of bank statements required the verification letter as well.  The sale set for September 22, 2019 was postponed and the sale that took place on October 22, 2019 was never noticed and that a settlement agreement had been reached on the modification making the lawsuit moot by agreement that Donald Short expressly stated.

(Dkt. 9.)

Under Rule 3.01 of the Minnesota Rules of Civil Procedure, an action is commenced by the service of the summons and complaint, as opposed to the filing of the pleadings with the Court.  *See* Minn. R. Civ. P. 3.01; *see also McConnell v. United States*, No. CIV.04-2711 JNE/JGL, 2005 WL 19458, at *3 (D. Minn. Jan. 3, 2005), *aff'd*, 188 F. App'x 540 (8th Cir. 2006) ("In federal court, an action is commenced by filing a complaint with the court, Fed. R. Civ. P. 3, in contrast to Minnesota State Court, where an action is commenced by service of a complaint, Minn. R. Civ. P. 3.01.").  It is unclear from the record whether Plaintiff was intending to serve the pleadings when he initially emailed them to Defendant.  Moreover, Defendant initially contested personal jurisdiction upon removal to this Court.  That said, Plaintiff failed to contest Defendant's

17

removal within thirty days as set forth by statute to the extent that he claims that the action does not belong before this Court. *See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 974 (8th Cir. 2011). Indeed, under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. . . ."

Although it is true Plaintiff never filed his action in state district court, Defendant took that step when he removed this matter to federal court. Moreover, while Defendant initially contested proper service, it now concedes that it has waived any right to object to the proprietary of service by failing to assert it as part of its motion to dismiss. *See* Dkt. 10 at 4; *see also Ballard v. Holinka*, No. CIV. 09-679PAM/SRN, 2010 WL 573147, at *1 (D. Minn. Feb. 12, 2010) ("Holinka previously filed a motion to dismiss under Rule 12(b)(1), (2), (3), and (6). But Holinka did not assert her Rule 12(b)(5) insufficient service of process defense at that time. As a result, she waived the defense.") (citing Fed. R. Civ. P. 12(g)-(h)) (internal citation omitted).

As such, the Court rejects Plaintiff's opposition to the motion to dismiss.[3]

---

[3] Ultimately, it is unclear as to what relief Plaintiff is seeking by virtue of his Notice and the Court notes that is recommending dismissal without prejudice. Moreover, the Court concludes that dismissal without prejudice is also appropriate as this Court has concerns regarding whether Plaintiff, who merely alleges that he is the assignee of the mortgagee, is the real party in interest, and therefore whether he ultimately has standing under Article III to assert these claims. *See Walton v. Miller*, No. 4:18-CV-01204-SNLJ, 2019 WL 265100, at *3 (E.D. Mo. Jan. 18, 2019).

## IV. RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 3) be **GRANTED** and that the Complaint be dismissed **WITHOUT PREJUDICE**.

DATED: June 12, 2020
*s/ Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).